NOT FOR PUBLICATION (Doc. No. 20)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| SALAHUDDIN F. SMART | |
| Plaintiff, | Civil No. 11-0996 (RBK/JS) |
| v. | **OPINION** |
| BOROUGH OF BELLMAWR, et al., | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Sergeant Michael Draham ("Defendant Draham"), Chief of Police William Walsh ("Defendant Walsh"), and the Borough of Bellmawr ("Defendant Bellmawr") (collectively, "Defendants"), for summary judgment on the complaint of Salahuddin F. Smart ("Plaintiff"). Plaintiff initiated this action against Defendant Draham for unlawful entry pursuant to 42 U.S.C. § 1983 (2006) for Defendant Draham's warrantless entry into Plaintiff's motel room. Plaintiff also asserts claims against Defendant Walsh and Defendant Bellmawr for failure to properly train Bellmawr police officers. Defendants move for summary judgment, pursuant to Federal Rule of Civil Procedure 56, asserting that Plaintiff has failed to establish a constitutional violation as a matter of law, or alternatively, that Defendant Draham is entitled to qualified immunity. Defendants further assert that Plaintiff has not established the required elements of a failure-to-train claim against either Defendant Walsh or Defendant Bellmawr. The court finds that Defendant Draham is entitled to qualified immunity, despite his unlawful entry into Plaintiff's motel room. Plaintiff has also

failed to allege facts sufficient to support a failure-to-train claim against the remaining defendants. As such, Defendants' motion for summary judgment is **GRANTED**.

## I. BACKGROUND

This lawsuit comes before the Court as a result of the alleged actions of Defendant Draham in conducting a warrantless search of Plaintiff's motel room. Plaintiff alleges that Defendant Draham searched his room without consent and in the absence of exigent circumstances, in violation of the Fourth Amendment. Compl. at ¶1.

On the evening of January 31, 2011, Defendant Draham arrived at Plaintiff's room at the Econo Lodge motel in Bellmawr, New Jersey to investigate a dispute reported via a 911 dispatch call. Statement of Undisputed Material Fact in Defs.' Br. in Support of Summ. J. ("Defs.' SUMF") at ¶3, 15. Earlier that evening, Plaintiff, who had been a guest of the motel for approximately one month, was involved in a "verbal and physical" altercation that included profanities. Defs.' SUMF at ¶4-5; Def,'s Br. In Support of Summ. J. ("Defs.' Br."), Ex. D.1. A member of hotel management, having seen the altercation, called 911 and reported that two males and a female were fighting in the lobby. Defs.' SUMF at ¶10. At some point prior to the police officer's arrival, the other male involved in the argument, known only by the alias "Cuba," went to Plaintiff's motel room to continue their discussion. Id. at ¶7. Plaintiff and Cuba continued to talk in the hallway, which was viewable by the hotel front desk via a security camera. Id. at ¶8.

At approximately 11:30 p.m. Defendant Draham and another officer arrived at Plaintiff's motel room to investigate what they believed to be a potential incident of domestic violence. Id. at ¶11. Prior to reaching Plaintiff's room, Defendant Draham had been alerted by hotel staff that one of the males involved in the altercation had returned to that room after the fight. Id. at ¶12.

When officers arrived at Plaintiff's room, both Plaintiff and a female, Ms. Denise Ambrosi, were in the room. Id. at ¶13. Plaintiff alleges that Defendant Draham informed him that the police could enter his room because they had received a 911 call "of a fight from . . . within the room." Pl. Undisputed Facts in Compl. at ¶4; Defs.' SUMF at ¶9. Officers entered the room and did not observe any indications that a fight had taken place. Defs.' SUMF at ¶16. After recording the occupant's contact information, the officers left. Id. Based on this incident, Plaintiff has filed a civil rights action pursuant to 42 U.S.C. §1983 against Defendant Draham for unlawful entry and also asserts that Defendant Walsh and Defendant Bellmawr are liable for their failure to train Bellmawr police officers regarding the proper criteria for executing lawful warrantless searches of hotel rooms.

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony. Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F.Supp.2d 572, 575 (D.N.J.2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that would be admissible at trial. See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n. 17 (3d Cir. 1995). The nonmoving party "may not rest upon

the mere allegations or denials of" its pleadings and must present more than just "bare assertions [or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact. Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed.R.Civ.P. 56(e). "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' mandates the entry of summary judgment." Watson v. Eastman Kodak Co., 235 F.3d 851, 857–58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

Local Civil Rule 56.1(a) requires that the movant for summary judgment provide a statement of undisputed material facts in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. The opponent must in turn furnish a responsive statement of material facts in its opposition papers, which indicates agreement or disagreement with each of the movant's material facts. L. Civ. R. 56.1(a). Similar to the movant's statement of facts, each disputed material fact must cite to the affidavits or other documents submitted with the motion. Any material fact that is not disputed by the non-movant is deemed undisputed for the purposes of the summary judgment motion. Id.

In this case, Plaintiff has not only untimely filed opposition papers, but he has also submitted two unsworn affidavits (though titled "Sworn Affidavit") in support of his late brief. Even if timely filed, these documents are not affidavits and would not have been relied upon by the court in deciding Defendants' motion. See Wolosyzn v. County of Lawrence, 396 F.3d 314, 323 (3d Cir. 2005). Consequently, the Court would only have considered Plaintiff's submitted depositions and interrogatories. Plaintiff has previously been instructed by the court on the proper procedure for opposing summary judgment motions. See Smart v. Borough of Lindenwold, Civil No. 07-6102, 2010 WL 891344 at *2-3 (D.N.J. Mar. 9, 2010). Plaintiff,

however, has failed to follow the appropriate rules of civil procedure. As such, the Court will treat the Defendant's motion as unopposed.

## III. DISCUSSION

### A. Count 1: Claim Against Defendant Draham

Defendant Draham first argues that he did not violate Plaintiff's rights because he entered Plaintiff's hotel room under exigent circumstances and on the basis of Plaintiff's implied consent. In the alternative, Defendant Draham invokes qualified immunity in response to Plaintiff's suit. As the analysis of whether Defendant Draham violated Plaintiff's constitutional rights is subsumed within the qualified-immunity discussion, this opinion will directly address the question of qualified immunity.

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity provides complete immunity from suit, not merely a defense to liability. Id.; Saucier v. Katz, 533 U.S. 194, 200–201 (2001). As such, questions of qualified immunity should be resolved at the earliest possible stage of the litigation. Pearson, 555 U.S. at 231; Saucier, 533 U.S. at 200–201.

In order to overcome an assertion of qualified immunity, a plaintiff must satisfy a two-prong test. The Court must first "decide whether the facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation." Couden v. Duffy, 446 F.3d 483, 492 (3d

5

Cir. 2006); Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (citing Saucier, 533 U.S. at 201). If the Court determines that a constitutional violation did occur, it must then consider "whether the constitutional right in question was clearly established." Id. Under the doctrine of qualified immunity, law enforcement officers' reasonable mistaken decisions are accorded deference. Hunter v. Bryant, 502 U.S. 224, 227 (1991). Consequently, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. An official is deprived the protection of qualified immunity only if his (or her) conduct both violated the Constitution and could not have been considered lawful by any reasonable person in his position. See Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007). Although it is "often appropriate" for courts to conduct this inquiry in the order described, the Court is not required to determine whether a constitutional right was violated before passing on the question of whether the right was clearly established. Pearson, 555 U.S. at 224.

    1.   Constitutional Violation for Unlawful Entry

The law is well-settled that warrantless searches inside a home are presumptively unreasonable and violate the Fourth Amendment. Brigham City v. Stuart, 547 U.S. 398, 403 (2006); United States v. Coles, 437 F.3d 361, 365 (3d Cir. 2006) (stating "warrantless searches and seizures inside someone's . . . hotel room are presumptively unreasonable"). There are, however, recognized exceptions to this presumption. Such a search and seizure may be excused either where "occupants consent or probable cause and exigent circumstances exist to justify the intrusion." Coles, 437 F.3d at 365. Defendants assert that Defendant Draham's search of Plaintiff's motel room was conducted both pursuant to Plaintiff's implied consent and on the

6

basis of exigent circumstances. The Court will address only Defendants' argument with respect to exigent circumstances.

To justify an otherwise unlawful entry on the basis of exigent circumstances, an officer must have probable cause to believe that a warrantless search is necessary. Id. at 365. In an emergency, the probable-cause element is satisfied "where officers reasonably believe a person is in danger." McNeil v. City of Easton, 694 F.Supp.2d 375, 388 (E.D. Pa. 2010); United States v. Holloway, 290 F.3d 1331, 1338 (11th Cir. 2002). The officer's determination need only have been "objectively reasonable at the time in question, based on the information available to the officer at the time." Daniels v. Cnty. of Media, No. 00-CV-911, 2001 WL 487859, at *3 (E.D. Pa. Mar. 5, 2001). "It is, in other words, a 'totality of the circumstances' analysis." Curley, 499 F.3d at 207. The Government bears the burden "to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." United States v. Wadley, Crim. No. 07-116, 2007 WL 4593508 (W.D. Pa. Dec. 28, 2007); Welsh v. Wisconsin, 466 U.S. 740, 750 (1980) (citing Payton v. New York, 445 U.S. 573, 586 (1980)).

In cases involving an officer's warrantless entry in response to a 911 call reporting potential domestic violence, the precise standard for probable cause remains indeterminate in this Circuit. Nevertheless, several Pennsylvania district courts have grappled with the issue. See Wadley, 2007 WL 4593508; McNeil, 694 F.Supp.2d at 389; Daniels, 2001 WL 487859, at *3. In Wadley, the court found no constitutional violation where officers, responding to a 911 call reporting a domestic dispute and potential hostage situation, entered a home after hearing yelling inside. 2007 WL at 4593508, at *7. In Daniels, the court found warrantless entry to be reasonable when officers responded to a 911 call reporting a domestic disturbance and observed an intoxicated husband in a heated conversation with his wife. 2001 WL 487859, at *3.

7

Similarly, in McNeil, the court held that the officers' entry was reasonable where an anonymous 911 caller reported suspected domestic violence and officers arrived to sounds of "a woman screaming and loud banging" coming from the home. 694 F.Supp.2d at 389.

Although each court emphasized the importance of the 911 call in determining whether officers had probable cause to enter, no court held that the 911 call reporting domestic violence *per se* established exigent circumstances. See Wadley, 2007 WL 4593508, at *6 ("While this Court declines to hold that a 911 emergency call reporting domestic violence *per se* provides for a finding of exigent circumstances, the Court finds that the police officers' entry into the home was plainly reasonable based on the totality of the circumstances presented here.") Instead, courts have determined that "a 911 dispatch call indicating that a domestic disturbance is in progress at a residence can be sufficient to establish the existence of exigent circumstances in which it is objectively reasonable for the police to enter the residence without a warrant, unless circumstances at the residence indicate that entry is unnecessary." Daniels, 2001 WL 487859, at *3 (emphasis added);  see Tierney v. Davidson, 133 F.3d 189, 197 (2d Cir. 1998) citing State v. Greene, 784 P.2d 257, 259 (Ariz. 1989), rev'd in part on other grounds, 898 P.2d 954 (Ariz. 1995) ("The call itself creates a sufficient indication that an exigency exists allowing the officer to enter a dwelling if no circumstance indicates that entry is unnecessary.")

One example in which the circumstances at the residence did not merit warrantless entry can be found in Hogan v. City of Easton. 2004 WL 1836992, at *8 (E.D. Pa. Aug. 17, 2004). In that case, the court determined that the officers' warrantless entry was not justified by exigent circumstances, despite Mrs. Hogan's 911 call reporting a domestic disturbance involving a gun. Id. In denying the defendant's motion to dismiss, the court noted that by the time the officers

arrived, Mr. Hogan "was unarmed and had calmed down considerably, there was no dispute in progress, and there was no need for the police to be there or to remain." Id.[1]

In their motion for summary judgment, Defendants emphasize that "domestic disputes are particularly 'combustible' and prone to 'explode' into violence without warning." McNeil, 694 F.Supp.2d at 389 citing United States v. Martinez, 406 F.3d 1160, 1164-65 (9th Cir. 2005). Defendants urge the Court to follow other courts that have accorded "great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger." Id. quoting Tierney, 133 F.3d at 197. Defendant Draham's reliance on this line of cases, however, is misplaced. Unlike those cases, in which officers observed circumstances that were consistent with an ongoing or imminent domestic dispute, Defendant Draham offers no evidence of circumstances that suggested a "need for the police to be there or to remain." See Hogan, 2004 WL 1836992, at *8. In fact, all Defendant Draham has established is that when he arrived at Plaintiff's motel room, Plaintiff and Ms. Ambrosi were inside. Def.'s SUMF at ¶14. Plaintiff specifically informed Defendant Draham that no altercation had taken place in the room. Id. at ¶16. Defendant Draham did not have a "substantial reason to believe that one of the parties was in danger" and acted in violation of Plaintiff's Fourth Amendment rights when he entered the motel room, albeit briefly, without a warrant. Thus, Defendant Draham's conduct constituted a constitutional violation.

2. Qualified Immunity

Though Defendant Draham committed an unlawful entry, he remains entitled to summary judgment on the basis of his qualified immunity. Qualified immunity is intended to be "broad in

---

[1] The court later dismissed the count for unlawful entry against the officers, holding that Mrs. Hogan consented to the officer's entry when she called 911 and asked for law enforcement intervention. See Hogan, 2006 WL 2645158, at *11. The court did not, however, revisit the issue of exigent circumstances.

9

scope" and was created to protect "all but the plainly incompetent or those who knowingly violate the law." Couden, 446 F.3d at 501.  Plaintiff can only overcome Defendant Draham's qualified immunity if it would have been "clear to any reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 492.  In other words, Plaintiff must establish that Defendant Draham's mistake as to what the law required was unreasonable. Id.

In this case, then, the inquiry is whether it was unreasonable for Defendant Draham to believe that a 911 call reporting possible domestic violence established probable cause for him to enter Plaintiff's motel room without a warrant.  As stated previously, however, the Third Circuit has yet to decide what is sufficient to establish probable cause under these circumstances. See McNeil, 694 F.Supp.2d at 389 (declining to accept Plaintiff's contention that the police needed additional corroboration before entering based on a 911 call reporting domestic violence).  Given this uncertainty, this Court cannot deem Defendant Draham to have unreasonably or knowingly violated the law with his warrantless entry.

Just as a review of federal law yields no authority that would have put Defendant Draham on notice that his conduct was unlawful, a similar analysis of New Jersey state law provides no justification for depriving Defendant Draham of the protection of qualified immunity.  In fact, State v. Edmonds, 47 A.3d 737 (N.J. 2012), a case recently decided by the Supreme Court of New Jersey, lends further credence to Defendant Draham's contention that his actions were reasonable.  In Edmonds, police entered a home without a warrant after receiving an anonymous 911 call reporting a "domestic dispute possibly involving a handgun," despite being told by the reported victim that there was no problem. Id. at 739.  Finding that the officer's initial warrantless entry was constitutional under the "community caretaker" exception, the court declared, "[d]omestic violence is an acute problem in our society. Allegations of

10

domestic violence, even if coming from a seemingly anonymous source, cannot be breezily dismissed and must be investigated. The police had a duty to look behind the denials by [the victim] while her son remained potentially in jeopardy in the apartment . . . . Therefore, we do not question the decision made by the police to enter the home to assure [the son]'s safety." Id. at 750.  This ruling is consistent with the New Jersey Domestic Violence law, which emphasizes that "the primary duty of a law enforcement officer when responding to a domestic violence call is to enforce the laws allegedly violated and protect the victim." N.J. Stat. Ann. § 2C:25-18 (1991).

Just as the reported victim in Edmonds assured the police that no domestic violence had taken place in her home, so too did Plaintiff assure Defendant Draham that no fight had taken place within the room.  Similar to the action approved in Edmonds, Defendant Draham briefly entered Plaintiff's motel room to question Ms. Ambrosi and verify that the other male referred to in the original police report was not in the room.  Defs.' SUMF at ¶14.

Finally, although Edmonds was decided after the events giving rise to the instant action took place, its conclusion that a police officer is not required to automatically accept the explanations of a resident after receiving a 911 call is not a novel one.  In State v. Frankel,[2] the Supreme Court of New Jersey declared that "the responding police officer is not required to blindly accept the explanation for the 9-1-1 call offered by the resident answering the door, but must base his decision on the totality of the circumstances." 847 A.2d 561, 574 (N.J. 2004).  The court continued to advise that "courts are loath to second-guess decisions made in good faith with the intent of protecting life." Id.

---

[2] The legal framework employed by the New Jersey Supreme Court in State v. Frankel for determining whether a warrantless search by a public safety official is justified under the emergency aid doctrine was overturned by State v. Edmonds. 47 A.3d at 739.  At the time of the Bellmawr incident, however, State v. Frankel was good law.

11

Given the indeterminate state of the law, the brevity of Defendant Draham's intrusion, and the emphasis that courts at both the state and federal level have placed on domestic violence and protecting police officers' discretion, Defendant Draham's actions were not unreasonable and did not amount to a "knowing violation" of the law.  Thus, the Court holds that although Defendant Draham unlawfully entered Plaintiff's motel room, he is entitled to qualified immunity and the claim against him must be dismissed.

### B. Counts 2 and 3: Failure to Train Claims Against Defendant Bellmawr and Defendant Walsh

Plaintiff also alleges that Defendant Bellmawr and Defendant Walsh failed to train, supervise, and discipline Bellmawr police officers on the exigent-circumstances exception to the warrant requirement.  To survive summary judgment, liability may not "be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Instead, a defendant "must have personal involvement in the alleged wrongs." Id.

According to the Supreme Court's holding in Monell v. Department of Social Services, 436 U.S. 658 (1978), Defendant Bellmawr—a municipality—can only be liable under § 1983 if Plaintiff proves the existence of a policy or custom that has resulted in a constitutional violation. See Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995).  "[L]iability for failure to train subordinate officers will lie only where a constitutional violation results from 'deliberate indifference to the constitutional rights of [the municipality's] inhabitants.'" Id. citing City of Canton, Ohio v. Harris, 489 U.S. 378, 392 (1989).

Here, Plaintiff has not produced any evidence of deliberate indifference on the part of Defendant Bellmawr, even if Defendant Draham's liability were in dispute.  In his untimely opposition papers, Plaintiff asserts that Defendant Bellmawr has a policy of allowing its officers

to unlawfully enter homes based solely upon inferred consent. Plaintiff has produced no evidence of such a policy or custom aside from his bare allegations and the incident in this case. Such conclusory allegations do not provide sufficient proof of a policy or custom required for § 1983 liability. See Groman, 47 F.3d at 637.

Similarly, Plaintiff asserts a failure-to-train claim against Defendant Walsh, alleging that Walsh knew of and acquiesced in his subordinates' violations. Def's Br. at 14. The Third Circuit has previously held that a supervisory official may face § 1983 liability under a knowledge-and-acquiescence theory. See Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). But the Supreme Court rejected the argument that officials who know of and acquiesce in the misdeeds of their subordinates can be liable for them. See Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). The Third Circuit has not yet decided whether a supervisor may only be held liable if he directly participates in unconstitutional conduct. See Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 70 (3d Cir. 2011). Regardless, Plaintiff has failed to produce evidence that Walsh knew of any violations of his subordinates. Plaintiff argues that none of the Bellmawr law enforcement training materials specifically reference certain state and federal cases involving warrantless entry. But this assertion is not a basis for liability, and Plaintiff has failed to connect Defendant Walsh with any potential constitutional violation committed by Defendant Draham.

Therefore, Defendant's motion for summary judgment as to the claims against Bellmawr and Walsh is granted.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED.  An accompanying Order shall issue today.


Dated: 9/24/2012                                              /s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge